## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) <br> ) <br> ) <br> ) |
| v. | )     **CRIMINAL NO. 05-105-P-H-02 & 03** <br> ) |
| **DEANNA SYBAL** AND <br> **DENNIS WESTLEIGH,** | ) <br> ) <br> ) |
| **DEFENDANTS** | ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

I granted the government's motion for a mistrial over the two defendants' objection after the jury was unable to reach a verdict. The government proposes to retry the defendants. The defendants have moved to dismiss the case against them on the basis of double jeopardy. Their motions are **DENIED**.

This was a straightforward drug conspiracy case. Law enforcement officers could not provide direct evidence of the defendants' involvement. Direct evidence came only from co-conspirators who had agreed to cooperate with the government. The clear issue, therefore, was credibility of this testimony. Neither defendant took the witness stand.

The trial lasted about 22 hours. There were 63 exhibits, consisting of drugs, photographs, wire transfer documents, phone bills, employment records, prison records, personal property seized by the police, and plea/immunity

agreements. After approximately nine and one-half hours of deliberation, the jury sent out a note stating: "Dear Judge Hornby, We are unable to reach a unanimous decision after giving the case our most thorough consideration. Please advise." With the agreement of all counsel, I then gave a modified Allen[1] charge and sent the jury back to deliberate further. About four and one-half hours after first announcing deadlock, the jury sent out another deadlock note stating: "Dear Judge Hornby, We continue to be unable to reach a unanimous decision on this case."[2] Just over half an hour later, while I was still conferring with the lawyers in the presence of the defendants about the proper response to this second note of deadlock (the alternatives being discussed included telling the jury to return the next day to deliberate; declaring a mistrial; repeating the modified Allen charge; asking the jury if additional time would help reach a verdict), the jury officer brought out still another note. It said: "Dear Judge Hornby, I have a concern that one of the jurors is biased against witnesses who have signed plea agreements. Her treatment of them is prejudicial." This note actually was signed individually by eight of the jurors. After hearing from the lawyers and with their agreement, I next sent a note to the jury asking if the jury could reach a unanimous verdict on either defendant and if more time would

---

[1] Allen v. United States, 164 U.S. 492 (1896).

[2] In the meantime, still another note came from the jury signed by two jurors individually, asking: "Can a witness' testimony be considered credible or uncredible [sic] based solely on the fact that the witness signed a plea agreement with the government?" I was concerned that two jurors had *(continued on next page)*

2

assist the jury in reaching a decision. Before that note went to the jury, the government had stated that it would request a mistrial if the jury answered "no" to both questions. The jury did respond "no" to both questions, and the government then did move for a mistrial. When I asked the defendants' positions, I received single-sentence objections from both lawyers. I granted the motion over the defendants' objections, and gave a lengthy explanation for my ruling. At the end, I asked the lawyers: "Anything else before the jury [returns]?" All replied "no." The jury then had been deliberating a total of about 15 hours.

The First Circuit has recently articulated the applicable law. If a mistrial is caused by "manifest necessity," double jeopardy does not prevent retrial. U.S. v. Brown, 426 F.3d 32, 36 (1st Cir. 2005). The determination of manifest necessity is a matter of discretion for the trial court. Id. Three factors are "particularly relevant":

> (1) whether the court provided counsel an opportunity to be heard;
> (2) whether the court considered alternatives to a mistrial; and
> (3) whether the court's decision was made after adequate reflection.

Id. at 36-37.

---

signed the note, not the normal routine.

On factor (1), the transcript makes undeniably clear that I heard counsel fully on each of the deadlock notes.[3] I also allowed them time to consult privately with their clients. Although the defendants' lawyers had little to say when the government did finally move for a mistrial, that was undoubtedly because by then everyone already knew and had discussed the options, the law, and the consequences.

On factor (3), I as trial judge started reflecting about what to do as soon as the first note concerning deadlock came out a little after 11:30 a.m. Although I gave the modified Allen charge, I am painfully aware from past experiences that the Allen charge often does not alter a deadlock. I was therefore paying close attention to the time lapse thereafter, reviewing my notes about the evidence and the length of the trial, and paying particular attention to the tenor of any additional jury notes. More "reflection" would not have yielded additional insights. By the time I granted the motion for mistrial, I had been reflecting upon the deadlock for approximately six hours.

As to factor (2), I considered all the available alternatives. After the second deadlock note, I did discuss with the lawyers the danger of telling the jury to continue deliberating, pointing out that the caselaw suggests that a second Allen charge is not recommended. But I had not made up my mind, and was

---

[3] There were also other jury notes, asking to see the drugs, and asking the meaning of a plea agreement and proffers and any connection between the two.

4

continuing to consider all the options that the lawyers had suggested. In the midst of that discussion, when I received the note signed by eight jurors implying that the vote was 11 to 1 for conviction, that one juror was taking the position that she would believe no witness who signed a plea agreement, and that at least eight of the remaining jurors were hostile to her position, I became very concerned that requiring continued deliberations would produce coercion of that juror, and that a resulting verdict, if guilty, would be subject to attack on appeal or by collateral attack. I sent the jury one more note, by agreement, asking if more time would help or if the jury could agree as to either defendant. The jury responded "no" to both. At that point, no more was necessary. The lawyers and I had fully discussed the available options. Telling the jury then to come back for another day of deliberations (as requested by the defendants) would probably have been clear error. Although the defendants' lawyers had abundant opportunity to inform me of any other alternatives, they presented only the ones I have summarized, and I considered them all.

Manifest necessity caused the declaration of mistrial. The motions to dismiss by both defendants are therefore **DENIED**.

**SO ORDERED.**

**DATED THIS 3RD DAY OF JANUARY, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CRIMINAL DOCKET FOR CASE #: 2:05CR105**

| | | |
|---|---|---|
| **United States of America** | represented by | **Renee M. Bunker**<br>Assistant United States Attorney<br>100 Middle Street Plaza<br>Portland, ME 04101<br>(207) 780-3257<br>email: renee.bunker@usdoj.gov |

**v.**

| | | |
|---|---|---|
| **Deanna Sybal (02)**<br><br>Defendant | Represented By | **Thomas J. Greco**<br>Williams & Greco, P.A.<br>17 Crescent Street<br>Biddeford, ME 04005<br>(207) 286-1897<br>email: tomgreco@maine.rr.com |

**and**

| | | |
|---|---|---|
| **Dennis Westleigh (03)**<br><br>Defendant | Represented By | **John A. Ciraldo**<br>Perkins Thompson Hinckley & Keddy<br>P.O. Box 426<br>Portland, ME 04112-0426<br>(207) 774-2635<br>email:<br>jciraldo@perkinsthompson.com |